1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| LINDA HALFORD, | )   1:09-cv-01815 GSA |
| | ) |
| | ) |
| Plaintiff, | )   ORDER REGARDING PLAINTIFF'S SOCIAL |
| | )   SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

11
12
13
14
15
16
17
18
19

**BACKGROUND**

20

Plaintiff Linda Halford ("Plaintiff") seeks judicial review of a final decision of the

21

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22

supplemental security income benefits pursuant to Title XVI of the Social Security Act.  The

23

matter is currently before the Court on the parties' briefs, which were submitted, without oral

24

argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25
26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 & 10.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff initially filed an application for supplemental security income benefits on December 1, 1998.  AR 82. Her application was denied initially and on reconsideration. AR 82. She requested and administrative hearing and Administrative Law Judge ("ALJ") Rocklin Lyons denied her application on September 26, 2000.[3]  AR 82-87.

Plaintiff filed a second application for supplemental security benefits on May 24, 2004. AR 58.  Her application was denied initially and on reconsideration.  Plaintiff requested a hearing before an ALJ, but withdrew her request. The denial became final on May 4, 2004.  AR 58.

Plaintiff filed a third application for supplemental security benefits on September 15, 2006. AR 61.  Her application was denied initially and on reconsideration.  AR 70.   Thereafter, Plaintiff requested a hearing before an ALJ.  AR 101.  ALJ Christopher Larsen held a hearing on April 17, 2009, and issued an order denying benefits on June 30, 2009. AR 7-17.  Thereafter, on September 11, 2009, the Appeals Council denied review.  AR 1-3.

Hearing Testimony

On April 17, 2009, ALJ Larsen held a hearing in Fresno, California.  Plaintiff appeared and testified. She was represented by attorney Melissa Proudian.  Vocational Expert ("VE") Thomas Dachelet also appeared and testified.  AR 50-53.

Plaintiff is a forty-three year old, single, female.  She has three grown children and currently lives alone.  AR 25.  Plaintiff did not complete high school and has not received a GED.[4] AR 27.  In 2003, she obtained a certificate for vocational training in retail sales but never worked in the field.  AR 28.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The ALJ found Plaintiff was not credible.

[4] It is unclear from Plaintiff's testimony how many grades she completed in high school as she gave inconsistent testimony regarding this issue.  AR 26-27.

Plaintiff last worked in 1998 for eight months as a housekeeper.[5] AR 28-29.  She quit this job because she experienced pain in her legs, arms, and lower spine. AR 31-32.   Prior to that time, she worked full-time as an in home care aide for a period of approximately two years. AR 29-30.  Both of these jobs required that Plaintiff lift between ten to twenty pounds. AR 29-30.

Plaintiff does not believe she is capable of working full-time because she experiences constant pain in her neck, back, arms, and legs. AR 31. She also has numbness in all her arms and legs.  AR 32.   The back pain started in 1991.  AR 41.  She had one epidural at that time, but it did not relieve the pain. AR 42.  Plaintiff indicates her pain currently ranges between a seven and eight on a ten point scale. AR 34-35.

The pain prevents Plaintiff from bending over. She also suffers from higher levels of pain for three to four days if she lifts more than two or three pounds. AR 36.  She is able to sit in a chair for forty-five minutes to an hour, but then needs to lay down for the rest of the day. AR 36-37.  She is only able to stand for ten minutes and can only walk one-half of a city block.  AR 38.  She has had physical therapy in the past, but it was not effective. AR 41-42.  Although she has been tested for "a lot of things" she believes that her immune system is "attacking itself."  AR 31.  Doctors have not given Plaintiff a diagnosis, but fibromyalgia and polymyalgia have been ruled out.  AR 42.

Plaintiff was taking Prednisone to treat her immune system for about a year.  AR 40.  She has also been taking Soma to treat her back pain "on and off" for approximately two years. AR 38-39.  The Soma decreases the lower back pain, but does not help with her neck pain.  AR 39.  The Prednisone relieves the muscle aches and the throbbing pain.  AR 40.   Plaintiff does not experience any side effects from either medication.  AR 39.  Plaintiff has never used a TENS unit and surgery has never been performed.  AR 41-42.

In addition to the pain, Plaintiff also experiences fatigue at least four times per week. AR 32, 42-43.  She lays down twelve hours a day if she does not have any appointments.  AR 44-45.  She began taking Prednisone most recently to help combat the fatigue. AR 44.   Plaintiff believes

---

[5] Plaintiff worked six hours per day, five days a week. AR 28-29.

1  that certain foods trigger both her fatigue and pain, but doctors are still in the process of

2  determining whether there is a causal connection. AR 44-45.

3       Plaintiff also suffers from depression, however, she takes Paxil which relieves most of

4  her symptoms. AR 47-50.  She currently is not receiving any additional mental health therapy or

5  treatment. AR 47.  She is able to concentrate for two hours at a time when taking her medication.

6  AR 50.  In the past, Plaintiff has also struggled with substance abuse. AR 32-33.  She last used

7  crack cocaine in 2007, but she has never had a problem with alcohol.  AR 33.  She currently has

8  one beer about once a month.  AR 33.

9       With regard to daily activities, Plaintiff is able to dress and bathe herself.  AR 47.  She

10  also cooks small meals and does the dishes "a little." AR 46.  She cleans the house with the

11  assistance of her sister, but she does not vacuum, mop, or sweep.  AR 46.  She also goes

12  shopping with her sister about once a month  AR 46.   Plaintiff does not engage in any social

13  activities, and has no friends that she sees on a regular basis. AR 47.  For fun, she watches

14  television three to four hours a day and reads approximately one to two hours a day.  AR 47.

15       VE Dachelet testified at the hearing. The VE was asked to assume a hypothetical worker

16  of Plaintiff's age, education, and work experience who can perform light, unskilled work that is

17  limited to simple repetitive tasks with limited public contact.  AR 51.  The VE indicated that

18  such a worker could perform Plaintiff's past work, as well as many other unskilled jobs ranging

19  from sedentary to light work. AR 52.

20       In a second hypothetical, the VE was asked to consider the same worker except that this

21  individual would only be able to stand and walk a total of two hours and sit a total of three hours

22  in an eight hour day.  AR 53.  The VE indicated there would be no jobs available for a person

23  with these limitations.  AR 53.

24       Medical Record

25       Plaintiff has been examined and treated at Bautista Medical Group ("BMG"), Fresno

26  County Mental Health Department, Sequoia Community Health Center, and University Medical

27  Center.  The entire medical record was reviewed by the Court (AR 203-354), however, only

28

4

1   those medical records pertaining to Plaintiff's physical impairments and pain will be addressed as
2   this is the sole issue presented on appeal.

3   ***Clinic Reports and Laboratory Results***

4   *Bautista Medical Group*

5   Plaintiff's treatment at BMG began on June 17, 2004, when she was treated for back pain
6   she had been experiencing "for months." AR 303-304.  Plaintiff reported Soma, Vicodin and
7   Tylenol 3 helped relieve the pain.  AR 303.  At the time of the examination, Plaintiff was taking
8   800 milligrams of Ibuprofen. AR 303.  The nurse practitioner opined that Plaintiff had chronic
9   back pain and prescribed Neurontin and Ultram.  AR 304.  He also recommended that Plaintiff's
10  prescription for Vicodin, Tylenol 3 or Soma "NOT" be refilled.  AR 304.  Instead, Plaintiff was
11  advised she should go to a pain specialist if her condition did not improve.  AR 304.

12  On October 27, 2004, Plaintiff was seen for complaints of back pain, numbness in her
13  hands, and losing her balance.  During the visit, Plaintiff stated that her lower back pain began in
14  1998, while stocking a "heavy rack" and that she re-injured it in 2003 while stocking clothes.
15  The physician prescribed Vicodin for pain. AR 301.

16  On November 22, 2004, Plaintiff returned to the clinic with continued complaints of back
17  pain and was again prescribed Vicodin. AR 298-300.  The physician opined that Plaintiff had
18  chronic lower back pain. AR 298.  He recommended an MRI and treatment at a pain control
19  clinic, as well as the use of a hand cane. AR 300.  On November 30, 2004, the MRI revealed
20  normal alignment of the vertebrae, with no disc, ligament, or other abnormalities. AR 297.

21  On January 14, 2005, Plaintiff was seen in the clinic for a persistent cough and lower
22  back pain. AR 292-294.  The nurse practitioner recommended that the Vicodin be discontinued.
23  AR 293.   It was noted that Plaintiff got upset and requested another provider when she was told
24  the Vicodin prescriptions would not be refilled. AR 294.

25  *Sequoia Community Health Centers*

26  Plaintiff was seen at Sequoia Community Health Centers from September 2006 through
27  October 2008.  AR 203-237; 315-340.   Several of these visits in 2006 were for treatment of
28  depression, routine physicals, and gynecological exams.  AR 206 -208, 235, 238, 240-241.

1    Plaintiff began treatments for back pain on August 27, 2007, when she went to the clinic

2    and was prescribed Vicodin. AR 234.  On September 6, 2007, Plaintiff called the clinic several

3    times requesting refills of Soma and Vicodin, but was told she would not get a refill until she was

4    seen at her scheduled appointment on October 9, 2007. AR 237.  Plaintiff was referred to go to

5    the emergency room if severe pain continued. AR 237.

6    Plaintiff had scheduled appointments for chronic pain on October 2 and October 9, 2007,

7    but she failed to appear.  AR 232-233. She did however attend an appointment on October 31,

8    2007.  AR 331.  At that time, she also complained of fatigue and weakness, and reported that she

9    is sometimes unable to do anything for two to three days.  AR 331. She told her doctor that

10   Vicodin, Ibuprofen, and other medications do not work. AR 331. She was prescribed Lyrica for

11   two weeks.  AR 331.

12   On November 14, 2007, Plaintiff was examined due to complaints of body aches.  AR

13   330.  At that time, Plaintiff's hands were also x-rayed because of complaints of bilateral hand

14   pain. AR 348.  No abnormalities or injuries were found.  AR 348.

15   Plaintiff did not appear for a scheduled appointment on December 14, 2007.  AR 329.

16   She attended an appointment on January 8, 2008, to obtain the results of her x-rays, as well as to

17   receive medication.  AR 328.

18   On January 30, 2008, Plaintiff returned again complaining of back pain and chronic

19   fatigue. The physician opined that she had myalgia and fatigue and noted that her sedimentation

20   rates were elevated.  Plaintiff was prescribed Vicodin. AR 327.

21   On February 21, 2008, Plaintiff presented at the clinic complaining of all over body pain

22   at a severity level of ten. AR 326.  The physician prescribed Prednisone and opined that

23   fibromyalgia was doubtful because of her elevated sedimentation rates.  AR 326.  He ordered x-

24   rays of her hands and spine and considered the possibility of rheumatoid diagnosis. AR 326.

25   However, spine and lumbar x-rays taken on February 21, 2008, showed unremarkable alignment,

26   with straightening of the normal cervical lordosis possibly secondary to muscle spasm.  Only

27   minimal degenerative changes of the cervical spine were noted. AR 337-340.   No

28   recommendations regarding physical limitations were made at that time. AR 340.

1   On March 6, 2008, Plaintiff went to the clinic to obtain the results of the x-rays and

2   reported that the Prednisone decreased the pain.  AR 325. The treating physician recommended

3   that she continue taking Prednisone. AR 325.

4   On April 7, 2008, Plaintiff called the clinic and requested a note indicating that she could

5   not do community service due to a medical condition.  AR 324.  The doctor indicated that

6   Plaintiff would need to be examined at the clinic before a note would be issued.  AR 324.

7   Plaintiff was examined on April 10, 2008, and again reported feeling much better when

8   taking Prednisone. AR 323. The physician opined that despite its effectiveness, the Prednisone

9   should be decreased due to plaintiff's young age.  The Prednisone prescription was lowered and

10  another appointment was scheduled for two weeks.  AR 323.

11  Lab specimens collected and examined in mid-April of 2008 showed increased

12  sedimentation rates. AR 335-336.  On May 8, 2008, Plaintiff was seen for a follow-up

13  examination and complained that the lower dosage of Prednisone was not working. AR 322. The

14  physician diagnosed chronic and severe myalgia with increased sedimentation rates with an

15  unclear cause.  AR 322.  He recommended that Plaintiff taper off of the Prednisone and

16  prescribed Vicodin. AR 322.

17  On May 27, 2008, Plaintiff went to the clinic seeking refills for Vicodin and Soma for her

18  back pain. AR 319.  She was given a prescription for Soma. AR 319.  On June 4, 2008, Plaintiff

19  was seen again at the clinic. It was noted that Plaintiff was now off Prednisone, and that she

20  received only partial relief from Vicodin. AR 316.   The physician diagnosed Plaintiff with

21  multiple myalgia (probably not fibromyalgia) and prescribed Vicodin. AR 316.  On June 18,

22  2008, Plaintiff went to the clinic seeking pain medication and was given a refill of Vicodin. AR

23  315.

24  Laboratory results for rheumatoid factors taken on June 18, 2008 revealed levels within

25  the normal range. AR 334.   On July 8, 2008, Plaintiff went to a follow-up visit to receive her lab

26  results and was prescribed Neurontin for pain. AR 314. Plaintiff did not appear for an

27  appointment on July 31, 2008. AR 313.  On August 14, 2008, Plaintiff was seen and prescribed

28  Toradol for chronic myalgia with an unknown cause.  AR 318.

On August 27, 2008, Plaintiff went to the clinic for a follow-up visit for her pain where she reported lower back pain, as well as left knee, right arm and right hip pain. AR 317. She was prescribed Soma and a hip examination was ordered.  AR 317.

On October 14, 2008, Plaintiff advised the clinic she will be seeking care elsewhere.  AR 312.  She was prescribed Baclofen, Tramadol and Naproxen.   AR 312. No other refills were prescribed.  AR 312.

*University Medical Center*

On December 4, 2008, Plaintiff went to the clinic at Community Medical Center complaining of arthritis/chronic joint pain. AR 310. On examination, she had no inflamation, no fever, and no redness. AR 310. The physician prescribed Naproxen, Baclofen and Tramadol and another appointment was rescheduled in four weeks.  AR 310.

On January 5, 2009, Plaintiff arrived at the clinic with complaints of chronic lower back, neck pain, and bilateral hand pain. AR 309. The physician ordered x-rays for Plaintiff's neck and back, ordered wrist splints, and prescribed the pain reliever Nabumetone. AR 309.

**Physician Opinion Evidence**

*Dr. Abbas Mehdi, M.D.*

On September 21, 2007, Dr. Abbas Mehdi, M.D. performed an orthopedic consultation at the request of the Department of Social Services. AR 228-230.  At the time of the evaluation, Plaintiff reported that her back pain began eight years ago.  However, she recently experienced a "flare up" approximately two months ago while cleaning the house. AR 228.  She reported that her pain was "10 out of 10" on the pain scale in her neck, shoulders and back. AR 228.

Plaintiff was uncooperative with the range of motion testing, as well as the cervical and lumbar spine examination due to her self-reported pain. AR 229.  However, Dr. Mehdi noted that she had a stable gait and had no difficulty getting on or off the examination table. AR 229.   In addition, Plaintiff's joints showed no significant signs of abnormality or deformity. AR 229. When asked to do the hand grip test, Plaintiff showed little to no effort with either hand. AR 229. Dr. Mehdi opined that he could not provide an impairment assessment until she was willing to assist in the process. AR 230.

1  *Dr. Ernest Wong, M.D.*

2  On October 27, 2007, non-examining state agency physician, Dr. Ernest Wong, M.D.

3  noted Plaintiff had been going to different urgent care centers for pain medications and appeared

4  pleasant but refused a neurological exam due to pain.  AR 242-243.  It was also noted that

5  Plaintiff was requesting refills of Soma and Vicodin, but her requests were not refilled until she

6  came in for an examination.  Dr. Wong found no limitations due to insufficient evidence.  AR

7  243.

8  *Fresno County Department of Employment and Temporary Assistance*

9  On July 26, 2006, Plaintiff was given a medical release from work for recurrent

10  depression with psychotic features, however, the psychologist indicated that she was able to care

11  for her children and did not require in home care. AR 305-306.

12  On August 27, 2008, Plaintiff was evaluated by a physician who diagnosed Plaintiff with

13  moderate to severe osteoarthritis in the back, hip and neck. AR 307-308.  Plaintiff was

14  temporarily released from work until September 2009, and was scheduled for follow-up

15  appointment on September 20, 2009. AR 308.

16  <u>ALJ's Findings</u>

17  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

18  September 15, 2006, and that her myalgia was not a severe impairment. AR 12-13. The ALJ did

19  find severe impairments of depressive disorder, not otherwise specified, and a polysubstance

20  abuse. AR 12.  Nonetheless, the ALJ determined that none of the severe impairments met or

21  exceeded one of the listing impairments.  AR 13.

22  Based on his review of the medical evidence, the ALJ determined that Plaintiff has the

23  residual functional capacity ("RFC") to perform simple, repetitive tasks with limited public

24  contact at all exertional levels.  AR 14.  The ALJ found that Plaintiff can perform her past

25  relevant work.  AR 16.  He determined that Plaintiff is a younger individual, with limited

26  education, whom is able to communicate in English.  AR 16.  Based on her age, vocational

27  background and RFC, the ALJ found Plaintiff can perform jobs that exist in significant numbers

28  in the national economy.  Thus, the ALJ determined Plaintiff is not disabled.  AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

10

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

found that Plaintiff: (1) had not engaged in substantial gainful activity since the date of her

application; (2) has an impairment or a combination of impairments that is considered "severe"

based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an

impairment or combination of impairments which meets or equals one of the impairments set

forth in 20 C.F.R. Part 404, Appendix 1, Subpart P; (4) could perform her past relevant work;

and was also able to perform jobs that exist in significant numbers in the national economy.  AR

10-17.  On appeal, Plaintiff argues that the ALJ erred at step two and failed to effectively

evaluate the pain testimony.

## DISCUSSION

### *Step Two Analysis*

Plaintiff argues that the ALJ failed to find her myalgia to be a severe impairment at step

two of the sequential evaluation process. Defendant counters that the ALJ's step two

determination was supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ must determine whether

Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as

one that does not significantly limit [the claimant's] physical or mental ability to do basic work

activities. An impairment is not severe "if the evidence establishes a slight abnormality that has

'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d

1273, 1290 (9th Cir. 1996).

The step two inquiry is a *de minimis* screening device to dispose of groundless or

frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).  To satisfy step two's

requirement of a severe impairment, the claimant must prove the existence of a physical or

mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory

findings: the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§

404.1508;416.908.  When evaluating symptoms, including pain, the effects of all symptoms must

be evaluated on the basis of a medically determinable impairment that could be reasonably

expected to produce the symptoms. 20 C.F.R. §§ 404.1529, 416.929.  Medical signs and

1   laboratory findings, established by medically acceptable clinical or laboratory diagnostic

2   techniques, must show the existence of a medical impairment which results from anatomical,

3   physiological, or psychological abnormalities and which could reasonably be expected to produce

4   the pain or other symptoms alleged.  20 C.F.R. § 404.1529(b).

5        The adjudicator's role at step two is further explained by SSR 85-28:

6        A determination that an impairment(s) is not severe requires a careful evaluation of the
         medical findings which describe the impairment(s) and an informed judgment about its
7        (their) limiting effects on the individual's physical and mental ability(ies) to perform
         basic work activities; thus, an assessment of function is inherent in the medical evaluation
8        process itself. At the second step of sequential evaluation, then, medical evidence alone is
         evaluated in order to assess the effects of the impairment(s) on ability to do basic work
9        activities.

10       Here, the ALJ found Plaintiff's depressive disorder and polysubstance abuse were severe

11  impairments. AR 12.  However, he determined that Plaintiff's chronic myalgia was only a slight

12  impairment which causes only minimal, if any, effect on her ability to work.  AR 12.  To support

13  this assertion, the ALJ notes that the etiology of the myalgia is unknown and medical testing

14  shows no injury and only minimal degenerative changes. AR 12.  The ALJ notes:

15       A November, 2004, MRI of the lumbosacral spine was unremarkable. February,
         2008, x-rays of the lumbar spine showed no facet disease. November, 2007, x-rays
16       of both hands were negative. A February, 2008, MRI of the cervical spine
         revealed only minimal degenerative changes.
17       AR 12.

18       These conclusions are supported in the record.  AR 297, 337-340, 348.  Plaintiff  argues

19  that the ALJ ignored her elevated sedimentation rates that are indicative of a rheumatoid type

20  disorder and are sufficient to establish a severe impairment. (Doc. 15 at pg. 9).   However, the

21  Court is not persuaded by this assertion.  Although Plaintiff's doctors noted elevated

22  sedimentation rates during her visits, there is no diagnosis in relation to those findings.

23  Similarly, there is no suggestion that these increased rates are related to her pain, nor is there an

24  indication that Plaintiff's ability to perform basic work-related activities is limited as a result.

25  AR 314, 316, 322-323.  In fact, laboratory results for rheumatoid factors taken after the elevated

26  sedimentation rates were discovered reveal these levels were within the normal range.  AR 334.

27  As the ALJ notes, even Plaintiff recognized that "she is being tested for a lot of things" and "no

28  diagnosis has been made."  AR 12-13.  Moreover, Plaintiff reported that medication reduces the

1    pain in her back significantly and the medical records support this conclusion.  AR 39; 325.

2    Thus, the ALJ properly concluded that "doctors have identified no medically-determinable

3    impairment to support [Plaintiff's] complaints of pain."  AR 12.

4           In her reply, Plaintiff argues that pursuant to *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th

5    Cir. 1991),  she is not required to present objective medical evidence of the *causal relationship*

6    between the medically determinable impairment and the symptom.  However, the law is clear

7    that she must establish that a medically determinable impairment could be *reasonably expected*

8    to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996); 20 C.F.R. §§

9    404.1529, 416.929.  While Plaintiff's doctors prescribed pain medication and noted the increased

10   sedimentation rates, her treating physicians never concluded these levels would reasonably be

11   expected to produce Plaintiff's symptoms, or that Plaintiff could not work based on this finding.

12          Moreover, in the step two analysis, the ALJ also notes that Plaintiff engaged in drug

13   seeking behaviors.  Although Plaintiff argues there is no evidence to support his finding, the

14   record reveals otherwise. For example, the ALJ stressed that Plaintiff sought pain medication

15   from several different providers.  AR 12.  Medical professionals at various times specifically

16   noted that her Vicodin prescriptions should not be refilled and Plaintiff became angry when

17   informed of this decision.  AR 12, 293-294, 304.  She also called the clinic several times

18   requesting that her prescriptions for Soma and Vicodin be refilled, but was told she would need

19   to be evaluated before refills would be given.  AR 12, 237.  Furthermore, Plaintiff failed to

20   appear at several appointments despite complaining of significant symptoms.[6]  AR 232-233; 267-

21   268; 329.  Thus, after examining the entire record, the ALJ's finding that Plaintiff engaged in

22   drug seeking behaviors is supported by substantial evidence which further undermines her

23   credibility regarding her symptoms.  AR 12.

24          Finally, the ALJ reliance on the physician's opinion evidence is also free of error.

25   Although Plaintiff argues that the ALJ improperly relied upon Dr. Mehdi's opinion, the ALJ

26

27          [6] Although the ALJ refers only to appointments related to Plaintiff's mental health visits, there is also
     evidence in the record that Plaintiff did not appear for appointments related to her pain after requesting additional

28   Vicodin because of pain symptoms.

simply noted that Plaintiff refused to participate in Dr. Mehdi's neurological testing due to pain. AR 12. Accordingly, the ALJ's conclusion that "the state-agency medical consultants have found insufficient evidence to impose any limitations" is correct. AR 13. Dr. Mehdi recommended that Plaintiff return for evaluation when she is more cooperative. Dr. Wong, the other state agency physician, found no limitations due to insufficient evidence. AR 243. The ALJ also considered a form from the Fresno County Department of Employment and Temporary Assistance indicating Plaintiff could not work due to pain. AR 15-16, 308. However, the ALJ reasoned that the form appears to accommodate Plaintiff's ability to qualify for AFDC and General Relief, implying that the county's standard for these benefits are different than the disability requirements for Supplemental Social Security Income. AR 15-16. Since the ALJ is the final arbiter of disability, this finding was proper. *See, Magallanes v. Bowen*, 881 F. 2d 747, 750 (9th Cir. 1989).

In sum, Plaintiff attempts to find error in the ALJ's reasoning, however, it is the *Plaintiff* who bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. Other than making new arguments regarding her increased sedimentation rates,[7] Plaintiff has not submitted objective evidence of a medically determinable impairment that would reasonably be expected to produce her pain symptoms, or that would

---

[7] This argument was not raised at the administrative hearing and is arguably waived. *See Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Marathon Oil Co. v. United States,* 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time"); *see also Mills v. Apfel,* 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council). *Cf. Silveira v. Apfel,* 204 F.3d 1257, 1260 n. 8 (9th Cir. 2000) (considering an issue raised for the first time on appeal "because it is a pure question of law and the Commissioner will not be unfairly prejudiced by [plaintiff's] failure to raise the issue below"); *Kokal v. Massanari,* 163 F.Supp.2d 1122, 1129 (N.D. Cal. 2001) (Laporte, J.) (concluding that claimant who was not represented by counsel at administrative hearing did not waive issue by failing to raise it before ALJ).

However, in *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the Supreme Court held that a Social Security claimant's failure to present an issue to the Appeals Council does not waive judicial review of that issue but specifically deferred ruling on whether a claimant must exhaust issues before the ALJ prior to seeking judicial review. *See id.* at 107, 112. The First Circuit explained in *Mills* that "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild; at the ALJ level it could cause havoc, severely undermining the administrative process." *Mills,* 244 F.3d at 8.

effect her ability to work.  This deficiency, coupled with the ALJ's other findings, establishes

Plaintiff has not met her burden.  The ALJ's step two analysis therefore is supported by

substantial evidence and is free of error.

### Credibility and the Evaluation of Subjective Complaints of Pain

Finally, Plaintiff argues that the ALJ failed to perform the appropriate credibility analysis

because he did not offer clear and convincing reasons for rejecting her pain testimony. (Doc. 21

at pg. 11).  Defendant counters that Plaintiff did not establish that her myalgia was a severe

impairment and therefore, the ALJ was not required to complete the credibility analysis. (Doc. 18

at 10).  Defendant further contends that even if the ALJ was required to do so, the credibility

determination was proper.

The ALJ is required to make specific findings assessing the credibility of plaintiff's

subjective complaints.  *Ceguerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is

not 'required to believe every allegation of disabling pain' or other non-exertional impairment,"

*Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the

complainant's testimony, "the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1996) quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir.

1988)).

In making this determination, the ALJ conducts a two-step analysis to assess subjective

testimony.  Under step one, the claimant "must produce objective medical evidence of an

underlying impairment" or impairments that could reasonably be expected to produce some

degree of symptom.  *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008).  If the first step

is met and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing

reasons for doing so."  *Id.*  Factors the ALJ may consider in weighing a claimant's credibility

include "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for

lying, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.*
citing *Smolen v. Chater*, 80 F. 3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by
substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278
F.3d at 959.

Plaintiff argues that the ALJ improperly discredited her testimony because he did not
make a credibility finding regarding her myalgia,[8] but she also concedes that the ALJ did not find
a severe impairment at step two. These two findings are related. The first step of the credibility
determination is to determine whether the impairments could be reasonably expected to produce
some degree of symptom, and is the same standard set forth in assessing the severity of
impairments at step two of the disability process. Thus, the if the ALJ finds the impairment was
not severe at step two, then it is not necessary to complete the credibility analysis. *See,*
*Tommasetti v. Astrue*, 533 F. 3d at 1039. Therefore, the ALJ did not err failing to make an
explicit credibility finding regarding Plaintiff's myalgia symptoms.

Notwithstanding the above, the Court also disagrees with Plaintiff's representation that
the ALJ did not address Plaintiff's subjective pain testimony at all. Indeed, although the ALJ's
decision only makes an explicit credibility finding with regard to Plaintiff's psychological
condition, the ALJ impliedly makes a credibility determination regarding Plaintiff's reports of
subjective pain in the step two analysis. AR 12-13; 15-16. As noted above, when finding
Plaintiff did not meet the step two criteria, the ALJ not only relies on a lack of objective medical
evidence, but also notes that Plaintiff engaged in drug seeking behaviors[9] including going to
several different health care providers to obtain prescriptions, requesting refills of medication
without examination, becoming angry when these requests for refills would not be
accommodated, and failing to appear for appointments despite complaints of pain. AR 12-13,
232-233, 267-268, 293-294, 304. The ALJ also correctly relied on the fact that Plaintiff's back

[8] In her reply, Plaintiff clarifies that she is only appealing the ALJ's credibility finding regarding her pain testimony, not the credibility finding relating to her mental health condition. (Doc. 21 at pg. 1 at footnote1).

[9] The ALJ specifically notes Plaintiff's drug seeking behaviors are a concern because of her history of polysubstance dependence. AR 15.

1  pain significantly decreased when taking medication.  AR 12.  These are all clear and convincing

2  reasons to reject Plaintiff's's credibility, whether they are applied at step two of the analysis, or

3  later in the sequential analysis.  *See, Warre Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

4  (9th Cir. 2006); (impairments that are effectively controlled with medication are not disabling);

5  *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical

6  condition with all other tests reporting normal provides a basis for rejecting claimant's testimony

7  of severity of symptoms); ; see also 20 C.F.R. § 416.929 (objective medical evidence can be used

8  in determining credibility; inconsistencies in evidence will support a rejection of credibility);

9  SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable

10  conclusion about credibility and the ability to function).

11      Accordingly, the ALJ's failure to make an explicit credibility finding regarding Plaintiff's

12  allegations of pain was not in error because she did not meet her burden at step two of the

13  sequential process.  AR 13.  However, even if the ALJ's analysis at step two was erroneous, the

14  ALJ adequately addressed concerns regarding Plaintiff's credibility in this section of the opinion.

15  Although evidence supporting an ALJ's conclusions might also permit an interpretation more

16  favorable to the claimant, if the ALJ's interpretation of evidence is rational, as it is here, the

17  Court must uphold the ALJ's decision where the evidence is susceptible to more than one

18  interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2      Based on the foregoing, the Court finds that the ALJ's decision is supported by

3  substantial evidence in the record as a whole and is based on proper legal standards.

4  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

6  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

7  Linda Halford.

8

9

10      IT IS SO ORDERED.

11    **Dated:**   **March 28, 2011**                    **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28